**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                  :
DARRIN M. GORDON,           :
                                    :        Civil Action
           Plaintiff,    :        10-5061 (JAP)
                                    :
              v.              :        **O P I N I O N**
                                    :
BERKELEY TWP POLICE et al.,  :
                                    :
           Defendants.    :
_____:

**Pisano**, District Judge:

    Plaintiff Darrin M. Gordon ("Plaintiff"), a pre-trial detainee, seeks to bring this 42 U.S.C. § 1983 action <u>in forma pauperis</u> ("IFP"), without prepayment of fees, pursuant to 28 U.S.C. § 1915. <u>See</u> Docket Entries Nos. 1 and 2. Following this Court's order directing submission of a proper IFP application, Plaintiff cured the deficiencies of his original submission. <u>See</u> Docket Entries Nos. 3 and 5. Plaintiff also submitted for filing his amended complaint ("Complaint"), correcting and superceding his initial pleading. <u>See</u> Docket Entry No. 4.

    Based on Plaintiff's affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u>, pursuant to 28 U.S.C. § 1915(a), and order the Clerk to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

For the reasons detailed below, the Complaint will be dismissed for failure to state a claim upon which relief can be granted.

## I.   **STANDARD OF REVIEW**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading

requirement stated in the United States Supreme Court in <u>Bell</u>

<u>Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court of Appeals

for the Third Circuit provided the courts in this Circuit with

detailed and careful guidance as to what kind of allegations

qualify as pleadings sufficient to pass muster under the Rule 8

standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224,

230-34 (3d Cir. 2008).  Specifically, the Court of Appeals

observed as follows:

> "While a complaint . . . does not need detailed
> factual allegations, a plaintiff's obligation [is] to
> provide the 'grounds' of his 'entitle[ment] to relief'
> [by stating] more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of
> action . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . .
> Rule 8 "requires a 'showing,' rather than a blanket
> assertion, of entitlement to relief."  <u>Id.</u> at 1965
> n.3. . . . "[T]he threshold requirement of Rule
> 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to
> relief.'"  <u>Id.</u> at 1966.  [Hence] "factual allegations
> must be enough to raise a right to relief above the
> speculative level."  <u>Id.</u> at 1965 & n.3. . . . [Indeed,
> it is not] sufficient to allege mere elements of a
> cause of action; instead "a complaint must allege
> facts suggestive of the proscribed conduct."  <u>Id.</u>

<u>Id.</u> at 230-34 (original brackets removed).

This pleading standard was further refined by the United

States Supreme Court in its recent decision <u>Ashcroft v. Iqbal</u>,

129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . .
> demands more than an unadorned ["]the-defendant-
> unlawfully-harmed-me["] accusation. [<u>Twombly</u>, 550
> U.S.] at 555 . . . .  A pleading that offers "labels
> and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [<u>Id.</u>] at

555. Nor does a complaint suffice if it tenders
"naked assertion[s]" devoid of "further factual
enhancement." <u>Id.</u> at 557. . . . A claim has facial
plausibility [only] when the plaintiff pleads factual
content . . . . <u>Id.</u> at 556. [Moreover,] the
plausibility standard . . . asks for more than a sheer
possibility that a defendant has acted unlawfully.
<u>Id.</u> [Indeed, even w]here a complaint pleads facts that
are "merely consistent with" a defendant's liability,
[the so-alleging complaint still] "stops short of
[showing] plausibility of 'entitlement to relief.'"
<u>Id.</u> at 557 (brackets omitted). [A <u>fortiori</u>,] the tenet
that a court must accept as true all of the
allegations contained in a complaint is inapplicable
to legal conclusions [or to t]hreadbare recitals of
the elements of a cause of action, supported by mere
conclusory statements [,<u>i.e.</u>, by] legal conclusion[s]
couched as a factual allegation [e.g.,] the
plaintiffs' assertion of an unlawful agreement [or]
that [defendants] adopted a policy "'because of,' not
merely 'in spite of,' its adverse effects upon an
identifiable group." . . . . [W]e do not reject these
bald allegations on the ground that they are
unrealistic or nonsensical. . . . It is the
conclusory nature of [these] allegations, rather than
their extravagantly fanciful nature, that disentitles
them to the presumption of truth. . . . [Finally,] the
question [of sufficiency of] pleadings does not turn .
. . the discovery process. <u>Twombly</u>, 550 U.S.] at 559
. . . . [The plaintiff] is not entitled to discovery
[where the complaint alleges any of the elements]
"generally," [<u>i.e.</u>, as] a conclusory allegation
[since] Rule 8 does not [allow] pleading the bare
elements of [the] cause of action [and] affix[ing] the
label "general allegation" [in hope to develop facts
through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

## II.  <u>**PLAINTIFF'S FACTS AND CLAIMS**</u>

Although the goals of Plaintiff's Complaint appear fairly

obvious and – in addition – the facts asserted by Plaintiff,

while stated in a bit of a convoluted manner, are reasonably

clear, the nature of Plaintiff's claims is not exactly self-

evident.

The events discussed in the Complaint seemingly began to unfold during the morning hours of April 13, 2008, when Plaintiff and a certain woman were at a certain location in the Berkley Township, New Jersey.  It appears that the woman had her hands tied or duck-taped by Plaintiff (and, perhaps, had her mouth duct-taped too), and she was physically assaulted by Plaintiff a number of times; apparently, either some or, perhaps, all of these assaults were of such force that they rendered her continuously unconscious.[1]  It also appears that the township police and the Ocean County SWAT team were dispatched to that location, and a "stand-off" between Plaintiff and law enforcement officers occurred and lasted for a few hours.[2]

Apparently, around 1 p.m. or so, the "stand-off" was over, Plaintiff was apprehended, and the woman was taken to a hospital. According to the Complaint, one of the police officers took possession of a box cutter, a sheetrock knife and duct tape that were either taken from Plaintiff or found at the scene (or, with respect to the duct tape, it could have been taken off the

_____

[1] It appears that the woman is expected to be the State's key witness in Plaintiff's upcoming criminal trial based on these events.

[2] Plaintiff does not seem to contest the very fact of that "stand-off"; rather, he appears to allege that the "stand-off" lasted not four hours, as he expects the State to maintain during his upcoming criminal proceedings, but some other period of time.

victim's hands and/or mouth); Plaintiff also believes that –
after taking possession of these items – this police officer
headed to the hospital to take photographs of Plaintiff's victim.

Plaintiff appears to be of opinion that these box cutter, a
sheetrock knife and duct tape could be exculpatory to Plaintiff.[3]
In addition, since Plaintiff seems to be of opinion that the
State will maintain, during Plaintiff's upcoming criminal trial,
that Plaintiff was beating his victim on the head with a toilet
tank lid, Plaintiff would like to have the lid of the toilet tank
examined for the victim's blood, in hope that lack of blood
traces would show that the victim was assaulted by other means.
Finally, Plaintiff also wishes to obtain the photographs, which
the police officer might have taken of the victim in hospital on
the date of the assault, because Plaintiff hopes that these
pictures could suggest that the victim's injuries were not very
serious.

In addition to the foregoing allegations, Plaintiff's
Complaint – occasionally switching from the events of April 13,
2008, to the events of December 10, 2009 (which appears to be the
date of either Plaintiff's grand jury proceedings or one of the
hearings conducted in preparation to Plaintiff's criminal trial)

---

[3] It appears that Plaintiff hopes that the duct tape not
show traces of the victim's saliva, suggesting that the victim's
mouth was not duct-taped.  The Complaint does not explain how the
box cutter or the sheetrock knife could serve as exculpatory
evidence.

– asserts that a certain police officer testified during these proceedings/hearing that the officer did not know whether the victim's mouth was duct taped but he knew about the victim's hands being tied and he also knew that the victim's body "wiggled" at one point when the victim was regaining conscious between the beatings.  Plaintiff is of opinion that: (a) the part of the officer's testimony about the victim's body "wiggling" was perjurious because the office could not have had first-hand knowledge of the events that took place while the "stand-off" lasted; and (b) that the prosecutor knowingly allowed this alleged perjury.

Furthermore, without specifying the exact or even approximate dates, Plaintiff asserts that he requested his defense attorney to seek production of these photographs of the victim in the hospital, the box cutter, sheetrock knife, duct tape and toilet tank lid (or requested his defense attorney to seek production of only some of these items or, perhaps, production of some other items), but his defense counsel informed Plaintiff that the items Plaintiff wished to have produced did not exist.  Plaintiff construed this statement of his defense counsel as a statement indicative of his prosecutor's refusal to produce Brady material.  Plaintiff also construed the aforesaid statement of his defense counsel as indicating that the local Office of the Prosecutor and/or the law enforcement officers of

the township or the County must have either failed to collect some physical evidence that might be favorable to Plaintiff or that the enforcement officers failed to preserve this evidence, or that they destroyed them.  From the foregoing, Plaintiff, in turn, deduced that his inability to have these non-existing evidence at his disposal during Plaintiff's upcoming criminal proceedings might prevent him from casting doubt as to the victim's credibility.  Projecting that he might be convicted on the grounds of his assault of the victim, Plaintiff closed his Complaint with a request for $750,000 in damages from each natural Defendant (clarifying that these amounts must be deducted from these Defendants' wages), $2,000,000 from the Police Department and $2,000,000 from the Office of the Prosecutor.

## III. <u>DISCUSSION</u>

### A.   <u>Entities That Are Not "Persons"</u>

Here, Plaintiff asserts that the Police Department and/or the Sheriff's Department and/or the Prosecutor's Office violated his rights by not preserving or by destroying the box cutter, sheetrock knife, duct tape and the lid of the toilet tank involved in Plaintiff's assaults of the victim, and by not taking (or not preserving, or destroying) the victim's post-attack photographs.  However, neither the Police Department nor the Sheriff's Department, or the Prosecutor's Office is a "person" within the meaning of a Section 1983 suit.  <u>See</u> <u>Will v. Michigan</u>

Dep't of State Police, 491 U.S. 58 (1989); Monell v. Dep't of
Social Services of City of New York, 436 U.S. 658, 688-90 (1978);
Martin v. Red Lion Police Dep't, 146 F. App'x, 558, 562 n.3 (3d
Cir. 2005); see also Johnson v. Runyon, 1999 U.S. Dist. LEXIS
5748 (W.D. Mich. Apr. 22, 1999).  Therefore, Plaintiff's claims
against the Police Department, the Sheriff's Department and the
Office of the Prosecutor will be dismissed.[4]

### B. **Persons Sued in Their Supervisory Capacity**

Absent consent by a state, the Eleventh Amendment bars
federal court suits for money damages against state officers in
their official capacities, see Kentucky v. Graham, 473 U.S. 159,
169 (1985), and – in addition – supervising officials cannot be
held liable for actions of their subordinates unless the litigant
asserts facts showing these supervisors' personal involvement in
the alleged wrongs.  See Iqbal, 129 S. Ct. 1937; Monell v.
Department of Social Services, 436 U.S. 658 (1978); Rizzo v.
Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69

---

[4] Alternatively, Plaintiff's challenges are subject to
dismissal under the Eleventh Amendment.  A suit may be barred by
the Eleventh Amendment even though a state is not named a party
to the action as long as the state is the real party in interest.
See Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659
(3d Cir. 1989) (citing Edelman v. Jordan, 415 U.S. 651, 663
(1974)).  For instance, a prosecutor's office, when acting in its
law enforcement capacity, is an arm of the State.  See Wright v.
State, 169 N.J. 422, 455 (2001).  Thus, a suit against such
office is a suit against the State itself and is prohibited by
the Eleventh Amendment immunity.  See MCI Telecomm. Corp. v. Bell
Atl.-Pa. Serv., 271 F.3d 491, 503 (3d Cir. 2001).

n.14 (3d Cir. 1993).

With the same token, claims against the supervisors are subject to dismissal to the degree they are based solely on the respondeat superior theory.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation – even if it is operation under contract with the state – cannot be held liable for the acts of its employees and agents under those theories).

Here, the Complaint clarifies that many natural persons named as Defendants in this action are sued solely on the grounds of the respondeat superior theory.[5]  Therefore, such claims as those raised against Defendants Weinlein, James Smith, Burton and Phil Smith will be dismissed.

---

[5] Specifically, as to Defendant John Weinlein, the Complaint asserts that he "[f]ailed to act in the duty to properly train and supervise the officers, detectives and patrolman involved in the proper techniques and procedures required and used in crime investigations"; as to Defendant James Smith, the Complaint identically asserts that he "[f]ailed to act in the duty to properly train and supervise the detectives and patrolmen involved in the proper techniques and procedures required and used in standard crime investigations"; as to Defendant Ken Burton, the Complaint also asserts that he "[f]ailed to act in the duty to properly train and supervise the detectives and patrolmen involved in the proper techniques and procedures used in standard crime investigations"; and as to Defendant Phil Smith the Complaint too asserts that he "[f]ailed to act in the duty to properly train and supervise the detectives and officers in the proper techniques used in crime investigations."  Docket Entry No. 4, at 3-5.

### c.   <u>Claims Suggesting Malicious Prosecution Challenges</u>

With regard to the remaining law enforcement officers, Plaintiff asserts that they violated his rights by "[f]ail[ing] to act in the duty to collect, find and process the crime scene [and] to preserve, conduct or allow testing of evidence favorable to [P]laintiff."  Docket Entry No. 4, at 4-6 (paraphrasing the same as to Defendants Stoker, Roth, Hess, etc.)

Plaintiff does not enlighten this Court as to the constitutional nature of law enforcement officers' duty to search a crime scene with any particular degree of diligence.  With a substantial stretch of imagination, this Court may construe Plaintiff's allegations to this effect as an attempt to state a malicious prosecution claim (alleging that the actions of the law enforcement officers maliciously triggered criminal prosecution of Plaintiff, in the sense that his prosecution would not have been initiated had the evidentiary matter (allegedly not collected/preserved by law enforcement officers) been collected, preserved and provided to the prosecutors).

A constitutional claim for malicious prosecution in the Third Circuit requires a plaintiff to establish five elements: (1) the defendants triggered a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing

the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[6]  See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); see also Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007); Pittman v. McDuffy, 240 Fed. App'x 524, 526 (3d Cir. 2007); Helmy v. City of Jersey City, 178 N.J. 183 (2003) (citing Lind v. Schmid, 67 N.J. 255 (1975)). "'Failure to prove any one of these . . . elements denies the plaintiff a cause of action for malicious prosecution.'" Wilson v. N.J. State Police, 2006 U.S. Dist. LEXIS 60514, at *28 (D.N.J. Aug. 15, 2006) (quoting Wiltz v. Middlesex County Office of the Prosecutor, 2006 U.S. Dist. LEXIS 46821, at *24 (D.N.J. July 12, 2006)).

The second element of malicious prosecution, favorable termination, is established when the plaintiff is "innocent of the crime charged in the underlying prosecution." Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000); see also Freeman v. State, 347 N.J. Super. 11, 27 (N.J. Super. Ct. App. Div. 2002)

---

[6] Analogously, under New Jersey law, "[a] malicious prosecution action arising out of a criminal prosecution requires proof: (1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff." Campanello v. Port Auth. of N.Y. & N.J., 2010 U.S. Dist. LEXIS 88785 (D.N.J. Aug. 27, 2010) (citing Lind, 67 N.J. at 262).

("The inquiry into whether a termination was favorable focuses on whether it was dispositive as to the accused's innocence of the crime for which they were charged"). Even "[i]f the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong"; rather the accused has to be actually acquitted of the charges at issue, Pittman v. Metuchen Police Dep't, 2010 U.S. Dist. LEXIS 108898, (D.N.J. Oct.13, 2010), since it is well settled that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution.  See Mondrow v. Selwyn, 172 N.J. Super. 379, 384 (N.J. Super. Ct. App. Div. 1980); Thomas v. N.J. Inst. of Tech., 178 N.J. Super. 60, 61 (N.J. Super. Ct. 1981).

Here, it is self-evident that the charges underlying Plaintiff's upcoming criminal prosecution were not dismissed in any fashion, moreover in the fashion showing that Plaintiff is innocent of these charges.  Therefore, Plaintiff's malicious prosecution claims (that is, if such claims were intended or if they could be, somehow, deduced from Plaintiff's factual allegations) must be dismissed for Plaintiff's failure to

establish the second element of his claim.[7]

D.   **Time-Barred Claims**

As noted in the preceding discussion, the legal nature of Plaintiff's claims asserting that law enforcement officers were, somehow, obligated to collect "some" or "more" exculpatory evidence for Plaintiff does not fit neatly – or even approximately – within the realm of any constitutional claim cognizable in Section 1983 proceedings (that is, short of the above-discussed malicious prosecution construction).

That being said, this Court cannot rule out the possibility that legal minds, if called to ponder at length over ways to construe Plaintiff's challenges based on the events immediately following Plaintiff's "stand-off" with authorities (e.g., Plaintiff's challenges alleging insufficient search of the crime scene by law enforcement officers or their failure to photograph the victim in hospital, or their mishandling/loss of evidence), might still fancy a constitutional cause of action other than that of malicious prosecution.  However, such possibility cannot

_____

[7] Analogously, the seemingly undisputed circumstances underlying Plaintiff's prosecution, that is, the alleged-by-Plaintiff multi-hour "stand-off" between Plaintiff and law enforcement officers, Plaintiff's tying/duct-taping of the victim, Plaintiff's continuous beating of the victim so she was rendered unconscious time and again, Plaintiff's possession of box cutter and knife, etc., indicate that Plaintiff cannot establish the third element of malicious prosecution claim, since it cannot be argued that Plaintiff's prosecution was initiated without probable cause regardless of what evidence would be collected at the crime scene.

salvage Plaintiff's challenges based on these events because all
these challenges are facially time barred.

For purposes of the statute of limitations, Section 1983
claims are characterized as personal injury actions.  See Wilson
v. Garcia, 471 U.S. 261, 275 (1983).  Accordingly, New Jersey's
two-year limitations period on personal injury actions, N.J.
Stat. Ann. § 2A:14-2, governs Plaintiff's claims.  See Montgomery
v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v.
Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir.
1989).

Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to
the person caused by a wrongful act, neglect, or default must be
commenced within two years of accrual of the cause of action.
See Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56
(3d Cir. 1987).  "[A] federal cause of action accrues when the
plaintiff discovers, or with due diligence should have
discovered, the injury that forms the basis for the claim."
Disabled in Action of Pennsylvania v. Southeastern Pennsylvania
Transp. Authority, 539 F.3d 199, 209 (3d Cir. 2008).

Here, the events of Plaintiff's "stand-off" with law
enforcement authorities and their examination of the crime scene
(and of the victim) took place on April 13, 2008.  Plaintiff's
original complaint in this matter, however, was executed on
August 27, 2010, and – thus – it could not have been submitted by

Plaintiff to his prison officials for mailing to this Court prior to that (August 27, 2010) date.  Therefore, Plaintiff's challenges based on all events that took place (or were discoverable with reasonable diligence) prior to August 28, 2008, are time barred.[8]  Consequently, all Plaintiff's challenges associated with the circumstances of Plaintiff's "stand-off," with the officers' examination of the crime scene, with the victim's transfer to a hospital, with the victim's examination by police in that hospital, etc. are subject to dismissal, since all these events took place many months prior to August 28, 2008.

### E.   Claims Barred by Witness Immunity

As noted <u>supra</u>, in addition to his challenges based on the events of April 13, 2008, Plaintiff also asserts that Defendant Roth committed (perjury during a certain December 10, 2009, proceeding pertaining to Plaintiff's currently ongoing prosecution) when Roth, allegedly, testified that he "knew [the victim's body] wiggled when she woke up from one of the beatings she took."  Docket Entry No. 4, at 8.

---

[8] While Plaintiff's Complaint details his efforts undertaken in connection with his criminal proceedings and interactions with his defense counsel, no statement made in the Complaint indicates that Plaintiff was prevented, by some extraordinary means or Defendants' actions, from timely submission of his original complaint in this matter.  Therefore, no equitable considerations applicable to statute of limitations analysis are triggered in this action.

However, the Supreme Court, in Briscoe v. LaHue, 460 U.S. 325, 330-46 (1983), held that trial witnesses are absolutely immune from civil liability under § 1983.  See also Peterson v. Bernardi, 719 F. Supp. 2d 419, 430 (D.N.J. 2010) (applying Briscoe absolute immunity to a § 1983 claim that state police's forensic expert gave false testimony at the plaintiff's criminal trial); Ali v. Person, 904 F. Supp. 375, 377-78 (D.N.J. 1995) (finding that Briscoe absolute immunity barred § 1983 claim premised on the assertion that a police officer gave false testimony during grand jury proceedings).  This testimonial immunity "applies equally to the testimony of 'ordinary citizens' and law enforcement officials," and "the Supreme Court adopted the immunity mindful that it would shield even witnesses who give knowingly false testimony to unjustly convict an innocent criminal defendant."[9]  Peterson, 719 F. Supp. 2d at 430 (citing Briscoe, 460 U.S. at 342 n.27, 345).

Therefore, all Plaintiff's claims based on the alleged

---

[9] No statement made in this Opinion examining Plaintiff's claims based on the alleged "perjury" should be construed as expressing this Court's opinion that Defendant Roth actually committed perjury or that Plaintiff is innocent of the charges underlying his criminal proceedings.  These matters, as well as all matters relating to the legal validity of past, current and future stages of Plaintiff's criminal prosecution are subject to determination by Plaintiff's current state tribunal and those tribunals that might, in some point in time, preside over Plaintiff's direct appellate and/or collateral state challenges, and/or federal habeas challenges, that is, if any of such challenges are actually undertaken by Plaintiff in the future.

perjurious testimony will be dismissed.

###### F.   **Claims Barred by Prosecutorial Immunity**

In connection with the above-discussed claims asserting that
Defendant Roth committed perjury, Plaintiff also maintains that
Defendant Hillary Bryce, the prosecutor of State charges in
Plaintiff's currently ongoing criminal proceedings, also violated
Plaintiff's rights by allowing Roth to commit the above-detailed
alleged perjury.  In addition, Plaintiff also asserts that Bryce
violated Plaintiff's rights by not providing Plaintiff with a
certain Brady material (or by not preserving that material).[10]

However, all Plaintiff's challenges are barred by
prosecutorial immunity.  The Third Circuit has held that "[t]he
decision to initiate a prosecution is at the core of a
prosecutor's judicial role.  A prosecutor is absolutely immune
when making this decision, even where he acts without a good
faith belief that any wrongdoing has occurred." Kulwicki v.
Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (citations
omitted).  The same applies to all pre-trial and trial stages of
criminal proceedings during which the prosecutor acts as advocate

---

[10] As noted earlier, it appears that Plaintiff is complaining
about Bryce's alleged failure to provide to Plaintiff's defense
counsel the evidence which – according to Plaintiff's defense
counsel – does not exist; such abstract evidence might include
either: (a) the box cutter, sheetrock knife, duct tape, lid of
the toilet tank and victim's photographs taken in the hospital on
the date of the crime; or (b) only a few  of these items; or (c)
any combination of these items and any other unspecified items;
or (d)  such unspecified items only.

for the State.  See Kalina v. Fletcher, 522 U.S. 118 (1997)

(relying on Imbler v. Pachtman, 424 U.S. 409 (1976)).  That rule

applies to allegations asserting witnesses' perjurious

testimonies fostered by prosecutors.  See Rose v. Bartle, 871

F.2d 331, 345 (3d Cir. 1989) ("charges that the prosecutors

induced witnesses to commit perjury are barred by the immunity

doctrine") (quoting Heidelberg v. Hammer, 577 F.2d 429, 432 (7th

Cir. 1978)); see also Jennings v. Shuman, 567 F.2d 1213, 1221-22

(3d Cir. 1977) ("[A] prosecutor is entitled to absolute immunity

'while performing his official duties' as a officer of the court,

even if, in the performance of those duties, he is motivated by a

corrupt or illegal intention") (citation omitted); accord Buckley

v. Fitzsimmons, 509 U.S. 259, 273 (1993) ("acts undertaken by a

prosecutor in preparing for the initiation of judicial

proceedings or for trial" enjoy absolute immunity).[11]

---

[11] Even the allegation of conspiracy between the prosecutor
and other defendants, e.g., police officers, comes within a
prosecutor's absolute immunity.  See Dory v. Ryan, 25 F.3d 81, 83
(2d Cir. 1994) ("absolute immunity protects a prosecutor from §
1983 liability for virtually all acts, regardless of motivation,
associated with his function as an advocate.  This would even
include . . . allegedly conspiring to present false evidence at a
criminal trial.  The fact that such a conspiracy is certainly not
something that is properly within the role of a prosecutor is
immaterial, because '[t]he immunity attaches to his function, not
to the manner in which he performed it.'  Barrett v. United
States, 798 F.2d 565, 573 (2d Cir. 1986). . . . As much as the
idea of a prosecutor conspiring to falsify evidence disturbs us .
. . we recognize that there is a greater societal goal in
protecting the judicial process by preventing perpetual suits
against prosecutors for the performance of their duties"); Davis
v. Grusemeyer, 996 F.2d 617, 628 n.20 (3d Cir. 1993)("engaging in

Analogously, allegations that a prosecutor, while acting as an advocate for the State, failed to disclose evidence potentially favorable to a criminal defendant are barred by prosecutorial immunity, see Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003)("A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under Brady v. Maryland, 373 U.S. 83, 87 (1963).  It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages"), and this rule has been long adopted and faithfully enforced in this Circuit.  See Yarris v. County of Delaware, 465 F.3d 129 (3d Cir. 2006) (where the Court of Appeals detailed and nuanced analysis of when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution and held that a prosecutor is entitled to immunity for making the decision to deliberately withhold exculpatory evidence before and during trial).  Therefore, all Plaintiff's claims against Defendant Bryce should be dismissed.

---

a conspiracy to maliciously prosecute does not affect prosecutor's absolute immunity from liability for the damages resulting from the malicious prosecution") (citing Rose v. Bartle, 871 F.2d 331, 347 (3d Cir. 1989)), abrogation on other grounds recognized by, Knight v. Poritz, 157 Fed. App'x 481, 487 (3d Cir. 2005)).

**G.    Plaintiff's Claims Are Barred by the *Younger* Abstention**

Here, the goal of Plaintiff's aforesaid challenges is self-evident: Plaintiff is asking this Court to award him damages, implicitly finding that, if Plaintiff is convicted, his conviction would be unduly obtained because of his inability to present the box cutter, sheetrock knife, duct tape, the victim's post-attack photographs and the lid of the toilet tank.  While Plaintiff's claims are not subject to the bar articulated in Heck v. Humphrey, 512 U.S. 477 (1994), see Dique v. N.J. State Police, 603 F.3d 181, 187 (3d Cir. 2010), all of Plaintiff's vaguely articulated challenges to hypothetical due process deficiencies of his upcoming trial are barred by the abstention doctrine articulated in Younger v. Harris, 401 U.S. 37, which "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).  "Younger abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."  Evans v. Court of Common Pleas, Delaware County, Pa., 959 F.2d 1227, 1234 (3d Cir. 1992), cert. dismissed, 506 U.S. 1089 (1993).  Comity concerns are especially heightened when, as here, the ongoing state governmental function is a criminal proceeding.  See id.

The specific elements of the <u>Younger</u> abstention are: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989). All three <u>Younger</u> criteria are met in the case at hand. First, Plaintiff's claim concerns the separate pending criminal case. Second, based upon the fact that Plaintiff is attempting to raise due process issues concerning the validity of his upcoming trial and potential conviction, the proceeding clearly implicates important state interests. Third, the State forum affords Plaintiff an adequate opportunity to raise his due process challenges.[12] Therefore, all Plaintiff's challenges (<u>i.e.</u>, those that were included and those that were not expressly included within the above-provided extensive discussion of all Plaintiff's claims) are subject to dismissal on the <u>Younger</u> grounds, since every statement in the Complaint implicates – in one way or another – the issue of legality of Plaintiff's criminal proceedings of his potentially upcoming conviction and

---

[12] Plaintiff has not asserted that he is unable to present his federal claims in his related state court proceedings. Thus, this Court may assume that the state procedures will afford an adequate remedy. <u>See</u> <u>Kelm v. Hyatt</u>, 44 F.3d 415, 420 (6th Cir. 1995) (citing <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff").

sentence.

**H.   Leave to Amend Will Be Futile**

Generally, even "[w]hen a plaintiff does not seek leave to amend a deficient complaint . . . , the Court must inform the plaintiff that he has leave to amend within a set period of time," Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002), that is, "unless amendment would be . . . futile." Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) (ordinarily, the plaintiff may be granted "leave [to amend,] . . . when justice so requires"); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (futility of amendment occurs when the complaint, even if amended, would not be able to state a claim upon which relief can be granted).

Here, Plaintiff already submitted his original complaint and his instant amended Complaint at bar. See Docket Entries Nos. 1 and 4. The amended Complaint at hand names eleven persons and entities as Defendants and details the facts underlying Plaintiff's challenges on four and a half single-spaced pages. See Docket Entry No. 4. However, every aspect of the Complaint indicates that each Plaintiff's allegation against every person or entity is deficient, usually on multiple grounds, and these deficiencies are conclusively fatal to Plaintiff's position

against each and every Defendant.[13]

Therefore, here, grant of leave to amend appears wholly futile.  For these reason, Plaintiff's amended Complaint, Docket Entry No. 4, will be dismissed with prejudice.

**IV.  CONCLUSION**

The Court will grant Plaintiff's application to file the amended Complaint in forma pauperis and will dismiss Plaintiff's claims with prejudice.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
**JOEL A. PISANO**
**United States District Judge**

Dated:  June 27, 2011

---

[13] E.g., Plaintiff's amendment of his allegations against entities not qualified as "persons" for the purposes of Section 1983 action would not alter the "non-person" status of these entities; Plaintiff's amendment of claims against persons who, under the detailed facts of the Complaint, could not have been personally involved in the events alleged in the Complaint would not alter the pure respondeat superior nature of Plaintiff's challenges; Plaintiff's amendment of claims suggesting malicious prosecution challenges would not alter the fact that, at this juncture, Plaintiff cannot establish that he was innocent of the crimes underlying his currently ongoing prosecution; Plaintiff's amendment of untimely claims would not turn time backward; Plaintiff's amendment of claims barred by prosecutorial or witness immunity would not change the legal principles of absolute immunity; and the totality of Plaintiff's challenges – unambiguously inviting this Court to render on the validity of Plaintiff's currently ongoing criminal proceedings and his potentially upcoming conviction and sentence – would continue implicating the Younger bar regardless of how Plaintiff would paraphrase the finer details of his claims.